# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

| | |
|---|---|
| In re:<br><br>**HEALTH DIAGNOSTIC LABORATORY, INC.**, *et al.*,<br><br>Debtors,[1] | **Chapter 11**<br><br>**Case No. 15-32919 (KRH)**<br><br>**(Jointly Administered)** |
| **RICHARD ARROWSMITH, AS LIQUIDATING TRUSTEE OF THE HDL LIQUIDATING TRUST,**<br><br>**Plaintiff,**<br><br>v.<br><br>**LEMBERG LAW, LLC, EILEEN ARENDT, LINDA CANCEL, EMILY REED, LEAH VOLESKY, CYNTHIA PORTER, JOLENE WIXOM, DANI SCHURGER, LARA TEBO, TARA ROECKS, KELLY PORTER, TERRI BARBANO, CALICO SVENDSEN, NICOLETTE CALDWELL, LORINNET CHANCE, TONI MERRIOTT, TIFFANIE** | **Adversary Proceeding No. _____** |

---

[1]     The Debtors, along with the last four digits of each Debtor's federal tax identification number, are: Health Diagnostic Laboratory, Inc. (0119), Central Medical Laboratory, LLC (2728), and Integrated Health Leaders, LLC (2434).

Cullen D. Speckhart (VSB No. 79096)
**WOLCOTT RIVERS GATES**
919 E. Main Street, Richmond, VA 23219
200 Bendix Road, Ste. 300 Virginia Beach, VA 23452
Telephone:     (757) 497-6633
Direct:          (757) 470-5566
Email:   cspeckhart@wolriv.com

*Counsel to Richard Arrowsmith, Liquidating Trustee of the HDL Liquidating Trust*

Richard S. Kanowitz (admitted *pro hac vice*)
Evan M. Lazerowitz (*pro hac vice* to be filed)
**COOLEY LLP**
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Email: rkanowitz@cooley.com
Email: elazerowitz@cooley.com

*Counsel to Richard Arrowsmith, Liquidating Trustee, and the Liquidating Trust Oversight Committee.*

**PAPICH, CHRISTINA LAGROU,
BARBARA K. MARKS, KIMBERLY
DIXON, KORYNNE BRAY, JOSEPH
DELFINO, KIRK D. MILLER, P.S.,
KRISTIN WICKSTROM, AND
NORTHWEST HEALTH SUMMIT, PS
D/B/A WOMEN'S HEALTH
CONNECTION, PS,**

**Defendants.**

## VERIFIED COMPLAINT

Plaintiff Richard Arrowsmith, in his capacity as Liquidating Trustee of the HDL Liquidating Trust (the "**Plaintiff**" or the "**Liquidating Trustee**"), appointed pursuant to the confirmed Modified Second Amended Plan of Liquidation (the "**Plan**") of Health Diagnostic Laboratory, Inc., and its affiliated debtors and debtors in possession (the "**Debtors**," or "**HDL**") in these jointly administered bankruptcy cases (the "**Chapter 11 Cases**" or the "**Cases**"), by his undersigned counsel, hereby files this Verified Complaint (the "**Complaint**"), against the above-captioned defendants (the "**Defendants**"), and respectfully alleges as follows:

## I.    NATURE OF THE ACTION

1.    Plaintiff brings this action against the Defendants to, among other relief sought, obtain an injunction enjoining the Defendants from interfering with HDL's collection of accounts receivable that constitute estate assets and a judgment holding the Defendants in contempt for willfully violating the automatic stay found in section 362(a) of Title 11 of the United Stated Code (the "**Bankruptcy Code**").

2.    Plaintiff also seeks related declaratory relief confirming that the accounts receivable constitute estate assets and are "debts" that are owed to Plaintiff, that alleged prepetition release language is inoperative, and that Plaintiff is not required to cease and desist from collecting

the accounts receivable.  In the alternative, Plaintiff seeks to avoid the alleged prepetition releases as fraudulent transfers.

## II.     PARTIES

3.     Plaintiff is the Liquidating Trustee and estate representative of the Debtors.

4.     Lemberg Law, LLC ("**Lemberg Law**") is a Connecticut limited liability company with its principal place of business in Wilton, Connecticut.

5.     Sergei Lemberg, Esq., is a member of Lemberg Law.

6.     Upon information and belief, defendants Eileen Arendt, Linda Cancel, Emily Reed, Leah Volesky, Cynthia Porter, Jolene Wixom, Dani Schurger, Lara Tebo, Tara Roecks, Kelly Porter, Terri Barbano, Calico Svendsen, Nicolette Caldwell, Lorinnet Chance, Toni Merriott, Tiffanie Papich, Christina Lagrou, Barbara K. Marks, Kimberly Dixon, Korynne Bray, Joseph Delfino, and Kristin Wickstrom (the "**Consumers**") are individuals whose healthcare providers submitted requisitions for certain laboratory tests on patient blood samples to HDL for analysis.

7.     Kirk D. Miller, P.S. ("**Miller**") is a Washington professional services corporation with its principal place of business in Spokane, Washington.

8.     Northwest Health Summit, PS d/b/a Women's Health Connection, PS ("**Women's Health**") is a Washington professional services corporation with its principal place of business in Spokane Valley, WA.

## III.     JURISDICTION AND VENUE

9.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 28 U.S.C. § 1334(b).

10.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

11.     This matter is a core proceeding within the meaning of 28 U.S.C. § 157 (b)(2)(A), (G), (H), and (O).

12.     The predicates for the relief requested herein are Bankruptcy Code sections 105(a), 362(a), 362(k), 544(b), 548, and 550, and Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## IV.    STATEMENT OF FACTS

### A.    Chapter 11 Cases

13.     On June 7, 2015 (the "**Petition Date**"), each of the Debtors filed with the Court its respective voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned Chapter 11 Cases.

14.     After the Petition Date, the Debtors continued to operate and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On June 9, 2015, the Court entered an order authorizing the joint administration of these Chapter 11 Cases [Docket No. 42].

15.     On June 16, 2015, the United States Trustee for the Eastern District of Virginia (the "**U.S. Trustee**") appointed the statutory committee of unsecured creditors (the "**Committee**").

16.     On May 12, 2016, this Court entered an order confirming the Plan (the "**Confirmation Order**"). Pursuant to the Plan and 11 U.S.C. § 1123, the Liquidating Trustee is the successor, for all purposes, of the Debtors and the Committee.

### B.    The HDL Sale

17.     On June 29, 2015, the Debtors filed the *Motion of Debtors and Debtors in Possession for Entry of an Order (I) Approving the Strategic Transaction Bidding Procedures, (II) Scheduling Bid Headlines and the Auction, (III) Approving the Form and Manner of Notice*

*Thereof and (IV) Granting Related Relief* [Docket No. 176] setting forth proposed bidding procedures for selling substantially all of the Debtors' assets (the "**Bidding Procedures**").

18.     On July 15, 2015, the Court entered an order approving the Bidding Procedures.

19.     In accordance with the Bidding Procedures, on September 10, 2015, the Debtors conducted an auction for the sale of substantially all of the business assets of HDL (the "**HDL Sale**") and selected True Health Diagnostics, LLC ("**True Health**") as the successful bidder for such assets.

20.     On September 17, 2015, the Court entered the *Order (I) Approving Asset Purchase Agreement and Authorizing the Sale of Assets of the Debtors Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, (III) Authorizing the Assumption and Sale and Assignment of Certain Executory Contracts and Unexpired Leases and (IV) Granting Related Relief* [Docket No. 512] (the "**Sale Order**") in which the Court approved the terms of the HDL Sale, including the terms of the Asset Purchase Agreement with True Health (the "**APA**"). A true and correct copy of the APA, without exhibits and schedules, is attached hereto as **Exhibit A**, and a true and correct copy of the Sale Order is attached hereto as **Exhibit B**.

21.     The HDL Sale closed on September 29, 2015 (the "**Closing Date**").

22.     Pursuant to the APA, among the assets purchased by True Health were accounts receivable aged less than 180 days as of the Closing Date (the "**Purchased Receivables**").

23.     Pursuant to the APA, including without limitation Schedule 2.2(m), HDL retained ownership of accounts receivable aged 180 days or more as of the Closing Date (the "**Excluded Receivables**"). A true and correct copy of Schedule 2.2(m) of the APA is attached hereto as **Exhibit C**.

24.     The Excluded Receivables include, among other things, amounts owed to HDL by patients for laboratory testing HDL performed.

25.     The amounts owed to HDL by patients for laboratory testing HDL performed are based on valid contracts or business expectancies (such contracts or business expectancies, together with the obligations, the "**Patient Obligations**").

26.     The APA defined the Excluded Receivables as "properties . . . of [the Debtors]." *See* Ex. B, § 2.1.

27.     Millions of dollars of Excluded Receivables remain outstanding.

28.     The consideration for the HDL Sale consisted of, among other things, $27,100,000 less the Good Faith Deposit and any Closing AR Adjustment (each, as defined in the APA), the assumption of certain assumed liabilities, and the execution and delivery by True Health of a promissory note.

29.     Prior to the Closing Date, HDL offered True Health the opportunity to purchase the Excluded Receivables and disclosed to True Health its intention to pursue collection of the Excluded Receivables.

30.     True Health did not accept HDL's offer to purchase the Excluded Receivables.

31.     The HDL Sale closed without True Health acquiring any rights in the Excluded Receivables.

32.     In the Sale Order, the Court found that True Health was not purchasing the Excluded Receivables, and enjoined "[a]ll persons holding or asserting any Liens, Claims, Encumbrances and Interests in the Excluded [Receivables]" from asserting or prosecuting claims against the Excluded Receivables.  *See* Ex. B, ¶ 33.

33.    The Court also found that the Purchased Receivables "constitute[d] property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code." Id. ¶ C.

34.    As recognized by the Court in the Sale Order, the Excluded Receivables are property of HDL's bankruptcy estate pursuant to section 541 of the Bankruptcy Code.

**C.    Collection of the Excluded Receivables**

35.    On or about July 28, 2015, HDL entered into an Agreement for Services with Accelerated Receivables Management, Inc. ("**ARM**"), to pursue collection of certain account receivables owned by HDL.

36.    Since that time, estate representatives have enlisted two additional collection agencies, Monterey Financial Services ("**Monterey**") and Remex, Inc ("**Remex**," and together with ARM and Monterey, the "**Collectors**"). True and correct copies of the agreements executed between HDL and the Collectors (the "**Collection Agreements**") are attached hereto as **Exhibit D**.

37.    The Collection Agreements constitute valid and enforceable contracts between the Collectors and HDL.

38.    The Collectors are debt collectors and not "professional persons" under Bankruptcy Code section 327(a).

39.    The Excluded Receivables contain at least four classifications of accounts, which, by category, may be described as (1) receivables due from patients who received monies in the form of reimbursement from their insurance carriers (the "**Paid to Patient Receivables**"); (2) receivables due from patients who are solely responsible to pay for laboratory testing they received from HDL; (3) receivables due from patients who are responsible to pay for laboratory testing

because they have not yet met their insurance deductibles; and (4) receivables that are due on account of insurance carrier denials.

40.      At the present time, the Liquidating Trustee only intends to pursue Paid to Patient Receivables pending further analysis and consideration by the HDL Liquidating Trust Oversight Committee.

41.      Since their engagement, the Collectors have transmitted notices to certain patients for whom HDL had performed laboratory testing. No lawsuits have been commenced against any patient in respect of any of the Excluded Receivables.

42.      In addition, after the HDL Sale, True Health collected more than $10 million worth of Purchased Receivables.

**D.      The True Health Litigation**

43.      On or about January 5, 2016, True Health sent letters to HDL and ARM demanding that HDL require ARM to cease and desist from all collection efforts with respect to the Excluded Receivables (the "**Cease and Desist Letters**").

44.      In addition, True Health and its Vice President for Sales, Jeffrey P. "Boomer" Cornwell, circulated via electronic mail notices to physicians, groups of physicians, and/or related entities stating that collection letters sent by ARM to patients were a fraudulent attempt to collect funds from patients and that such collection efforts were in direct violation of HDL's stated billing policy.

45.      In response to True Health's interference with ARM's collection efforts, on February 2, 2016 HDL filed an adversary proceeding in this Court, Case Number 16-03011-KRH, against True Health and Mr. Cornwell (the "**True Health Litigation**") seeking, among other

things, an injunction enjoining True Health and Mr. Cornwell from interfering in HDL's collection efforts and holding them in contempt for willfully violating the automatic stay.

46.     On February 5 and February 12, 2016, the Court entered orders granting temporary and preliminary injunctions (the "**Injunction Orders**"), respectively, enjoining True Health and Cornwell from taking any actions to interfere with HDL's collection of the Excluded Receivables. True and correct copies of the Injunction Orders are attached hereto as **Exhibit E**.

47.     In the Injunction Orders, the Court held that attempts to interfere with the Collectors' efforts to collect the Excluded Receivables constituted willful violations of the automatic stay.

48.     In reaching this conclusion, the Court implicitly found that the Excluded Receivables are estate assets because the underlying adversary complaint requested declaratory relief under section 362(a)(3) of the Bankruptcy Code, which prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

49.     The Court's authority to grant injunctive relief and bar third parties from interfering with the Collectors' efforts was necessarily predicated upon a finding that the Excluded Receivables are property of HDL's bankruptcy estate.

50.     The True Health Litigation is still pending.

**E.     Third Party Interference with Estate Collection Efforts**

51.     Willful violations of the automatic stay occurred at the orchestration of parties who insist upon frustrating the work of the Collectors with respect to the Excluded Receivables despite the Court's unambiguous prior directive in the Injunction Orders.

52.     Upon information and belief, Lemberg Law, which represents all of the Consumers besides Kristin Wickstrom ("**Wickstrom**"), has threatened to sue the Collectors for their activities as debt collectors for the estates and has dispatched correspondence designed to hamper the Liquidating Trustee's legitimate efforts to collect property of the estate consistent with his duties under the Plan.

53.     Lemberg Law has also used physician practices, including Women's Health, as a means to amass more clients and to further interfere with collections of receivables that constitute property of HDL's estate.  An example of solicitation material aimed to drive patients to Lemberg Law, as posted on the website of the Women's Health in Spokane, Washington, is attached hereto as **Exhibit F**.

54.     The Liquidating Trustee is also aware that various and potentially unknown parties, who may be associated with Lemberg Law, have issued consumer complaints to the Attorney General of the State of Washington and the Attorney General of the State of Texas, and have further made written advances to the U.S. Trustee enclosing copies of letters directed to Monterey (the "**Patient Letters**"). A representative sample of the Patient Letters, believed to be prepared by Lemberg Law, is attached hereto as **Exhibit G**.

55.     In response to Lemberg Law's attempts to interfere with the collection of the Excluded Receivables, on June 3, 2016, the Liquidating Trustee filed a *Motion to (A) Enforce the Automatic Stay to Certain Accounts Receivable Constituting Property of the Estate; (B) Extending the Automatic Stay to Collection Entities Acting at the Aid and Direction of the Liquidating Trustee for Purposes of Collecting Such Property for the Benefit of Creditors; and (C) Granting Related Relief under 11 U.S.C. § 105*  (the "**Motion to Enforce and Extend**") [Docket No. 1145].

56.    In the Motion to Enforce and Extend, the Liquidating Trustee sought an order enforcing the automatic stay to the Excluded Receivables, and to extend the automatic stay to the Collectors, to protect the Collectors from threat of suit and other interference.

57.    After the Liquidating Trustee filed the Motion to Enforce and Extend, Kristin Wickstrom ("**Wickstrom**") filed an action on June 8, 2016, entitled *Wickstrom v. Monterey Financial Services, Inc.*, Case No. 2:16-cv-00197-SAB (the "**Wickstrom Complaint**"), pending in the United States District Court for the Eastern District of Washington.   A copy of the Wickstrom Complaint is attached hereto as **Exhibit H**.

58.    Upon learning of the Wickstrom Complaint, counsel for the Liquidating Trustee contacted Wickstrom's counsel, Miller, indicating that Monterey was employed by the Liquidating Trustee and sought to collect property of the estate.

59.    Counsel for the Liquidating Trustee transmitted the Motion to Enforce and Extend to Wickstrom's counsel, among other relevant documents including the Injunction Orders. Counsel for the Liquidating Trustee additionally requested that the Wickstrom Complaint be dismissed as representing a willful violation of the automatic stay

60.    Miller responded that he did "not intend to delay in [his] prosecution of the federal lawsuit against Monterey unless and until [he is] compelled to do so by court order."

61.    The Liquidating Trustee supplemented the Motion to Enforce and Extend to specifically address the Wickstrom Complaint and requested that the Court enter an order protecting the Excluded Receivables and the Collectors from the disruptive acts of Wickstrom and her counsel.

62.    At a hearing held on June 21, 2016, the Court approved the Motion to Enforce and Extend over the Consumers' objections.  The Court extended the automatic stay, but only did so

in an abundance of caution, holding that "I don't think I need to extend it, because [the Collectors are] agents of the estate collecting property of the estate, but to the extent there's any doubt it extends to the collection agencies."

63.      On July 1, 2016, the Court entered an order granting the Motion to Enforce and Extend (the "**Stay Order**"). A copy of the Stay Order is attached hereto as **Exhibit I**.

64.      The Stay Order enforced and extended the automatic stay of 11 U.S.C. § 362 "to protect the Excluded Receivables from any and all interference and assertion of control by any party other than the Liquidating Trustee." The Stay Order also protected the "Collectors from any and all claims, threats, and actions initiated against the Collectors in respect of the Collectors' work in assist[ing] . . . the Liquidating Trustee."

## F.      The Underlying Debt

65.      The Consumers are all patients whose healthcare providers submitted requisitions for laboratory tests on patient blood samples to HDL for analysis.

66.      Upon information and belief, most of the accounts assigned to the Collectors represent amounts owed by the Consumers to HDL as Paid to Patient Receivables.

67.      Almost all of the Consumers were patients of Women's Health in Spokane, WA.

68.      The Consumers have argued that the Liquidating Trustee is not entitled to collect the Excluded Receivables because of certain statements allegedly made on behalf of HDL prior to the Petition Date in the company's marketing materials.

69.       Based upon these statements, the Consumers allege that there is no "debt" to be collected under the provisions of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p (the "**FDCPA**").

70.     Upon information and belief, the marketing materials were provided by sales representatives employed by HDL's outside marketing agency directly to physicians, many of whom derived substantial remuneration based on the grossly out-of-market commissions and are now employed by True Health.

71.     According to the Consumers, the Liquidating Trustee's ability to collect the Excluded Receivables is foreclosed by the following statement, as appears in the referenced marketing materials (the "**Alleged Releases**"): "[f]or patients with PPO/POS/HMO insurance, if it turns out your insurance company does not cover a specific test, HDL Inc. assumes all the risk."

72.     However, the same marketing materials also state: "IMPORTANT: If your insurance company sends a check directly to you, rather than HDL, Inc., please  sign the back of the check, write, 'Pay to the order of HDL, Inc.' and forward the check along with the 'Explanation of Benefits' to the address at the right."

73.     Other marketing materials such as the pricing overview attached hereto as **Exhibit J** (the "**Pricing Overview**") also indicate four instances in which patients of HDL would be responsible for paying for services:

> 1)  If HDL, Inc. learns that payment for services was sent directly to the patient and not forwarded to our billing department as requested above.
>
> 2)  If the patient does not have medical insurance or if the patient is considered "self-pay."
>
> 3)  If a patient has an HSA/HRA with a high deductible, he or she may choose a self-pay option and therefore would receive a bill.
>
> 4)  If HDL, Inc. has filed claims with the patient's insurance company and the patient has NOT met the patient contribution requirements (i.e. deductibles, co-pays, co-insurance, etc.) for laboratory services.

74.    At the time lab tests were ordered for each Consumer, the healthcare provider filled out an HDL lab requisition request (the "**Lab Requisitions**") which was to be signed by the patient. The Lab Requisitions included a section entitled "Release and Assignment of Benefits," which stated as follows:

> As a courtesy, HDL Inc. will make every reasonable effort to obtain reimbursement for ordered tests.  I authorize HDL Inc. to release to Medicare, its carriers, and any insurance carrier or health plan providing medical benefits to me, any information that may be needed for claim purposes. . . .  **Bill to insurance:**  I understand that if my insurance company pays me directly for services rendered by HDL Inc., I am responsible for forwarding such payment to HDL Inc.  I also understand that I am responsible for any deductible/copayment, as required by my plan.  **Important**: Insurance regulations require HDL Inc. to seek payment.

75.    The language in the marketing materials, the Pricing Overview, and the Lab Requisitions clearly indicate that HDL never intended to waive its right to collect the Excluded Receivables.

**G.    HDL's Insolvency**

76.    At all relevant times, HDL was insolvent, had unreasonably small capital for its business, and incurred or should have known it was incurring debts that it lacked the ability to pay.

77.    From October 2009 onward, HDL was incurring millions of dollars in unrecognized liabilities to the government, private payers, and unsecured creditors, far beyond the value of its assets.

78.    Although HDL appeared to be generating huge revenues and profits, which it freely distributed to its shareholders, HDL failed to account for the catastrophic liabilities its improper business practices were creating. Once HDL was forced to stop these improper practices, it experienced a predictable and precipitous drop in revenues.

79.     From the outset, HDL failed to account for these large and growing liabilities, together with millions of dollars owed to other unsecured creditors, or to reflect them on its financial statements at the time it made distributions to shareholders. Had HDL reflected these liabilities on its financial statements, those financial statements would have shown that HDL was insolvent at all relevant times.  HDL's audited financial statements, therefore, failed to reflect the true state of HDL's business.

80.     Upon information and belief, in January 2014, HDL was experiencing cash flow problems and was in danger of violating a bank covenant.  In response, several of HDL's officers and directors made short-term loans to HDL, but HDL's liquidity problems, financial distress, and insolvency did not cease, and in fact, became even worse.

81.     At all relevant times, HDL was insolvent and the fair amount of its liabilities exceeded the fair value of its assets. In addition, given the large and growing liability exposure that HDL did not acknowledge, at all relevant times, HDL had unreasonably small capital with which to conduct its business, and incurred or should have known it was incurring debts that it lacked the ability to pay as they came due.

82.     At the time of its June 7, 2015 bankruptcy filing, HDL itself listed approximately $108 million in scheduled claims. Although grossly understated, that figure was well in excess of the value of HDL's assets. Total filed claims in the HDL bankruptcy proceeding vastly exceed the scheduled amount and are approximately $3 billion, dwarfing the value of HDL's assets and underscoring the depth of HDL's insolvency.

83.     Four creditors alone, the U.S. Government and three private payers, collectively account for more than $325 million in liabilities, all arising from HDL's improper business practices. These creditors are (1) the U.S. Department of Justice, with a claim of $94 million; (2)

United Healthcare, with claims of $96 million; (3) Aetna, with claims totaling $77 million; and (4)

Cigna, with claims of $59 million.

## V.    CLAIMS FOR RELIEF

### COUNT I
**(Finding of Contempt – Bankruptcy Code Sections 105(a) and 362(a))**

84.    Plaintiff repeats, realleges, and incorporates by reference the allegations contained

in paragraphs 1 through 83 of this Complaint as though fully set forth herein.

85.    Section 105(a) of the Bankruptcy Code authorizes the Court to issue "any order,

process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy

Code]." 11 U.S.C. § 105(a).

86.    Section 362(a) of the Bankruptcy Code operates as a stay that protects HDL and

property of its estate.

87.    Relief under sections 105(a) and 362(a) is particularly appropriate in this case

where Plaintiff requires relief that is necessary in order to preserve the value of HDL's estate.

88.    The Defendants have willfully violated the automatic stay imposed under 11 U.S.C.

§ 362 and unjustifiably interfered with the Collection Agreements and the collection of the

Excluded Receivables, colluded with each other and numerous physicians to convince patients not

to pay amounts rightfully owed to HDL, and made numerous false statements regarding HDL's

right to collect the Excluded Receivables and Plaintiff's employment of the Collectors.

89.    Pursuant to the automatic stay imposed by the Bankruptcy Code, and as further

evidenced by the Stay Order, the Defendants were and are prohibited from taking any actions that

improperly interfere with property of HDL's estate, including the Excluded Receivables.

90. The Defendants' actions, including the filing of the Wickstrom Complaint, constitute attempts by the Defendants to interfere with Plaintiff's rights to pursue collection of the Excluded Receivables, which are property of HDL's estate.

91. The Defendants' actions have caused and continue to cause irreparable harm by preventing Plaintiff from recovering property of HDL's estate.

92. The likelihood of the irreparable harm to Plaintiff outweighs any harm to the Defendants.

93. Accordingly, Plaintiff is entitled to entry of an order holding the Defendants in contempt of court for violating the automatic stay until such time as the Defendants cease interfering with the collection of the Excluded Receivables and all other damages sustained by Plaintiff are reimbursed by the Defendants.

**COUNT II**
**(Tortious Interference with Contract)**

94. Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 93 of this Complaint as though fully set forth herein.

95. As evidenced by their receipt of the Motion to Enforce and Extend, the Defendants have actual knowledge of the Collection Agreements.

96. Despite not being party to the Collection Agreements, the Defendants have intentionally interfered with such contracts by demanding that the Collectors immediately cease and desist the collections efforts that the Collectors are contractually obligated to perform.

97. Despite not being a party to the Patient Obligations, Defendants have interfered with the Patient Obligations by demanding that the Collectors immediately cease and desist efforts to collect the amounts owed to Plaintiff.

98.    Despite not being parties to either the Collection Agreements or any of the Patient Obligations, the Defendants have intentionally interfered with the Collection Agreements and many of the Patient Obligations by directing physicians, groups of physicians, and/or related entities to instruct their patients not to respond or comply with any attempts by the Collectors to collect on the Excluded Receivables.

99.    The Defendants' actions in interfering with the Collection Agreements and preventing collection of the Excluded Receivables have caused, and continue to cause, significant and irreparable harm to HDL's estate.

100.    Plaintiff has no adequate remedy at law.

101.    As a result, Plaintiff is entitled to an injunction enjoining the Defendants from tortiously interfering with the Collection Agreements and the efforts of Plaintiff to collect the Excluded Receivables.

102.    Plaintiff requests that the Court enter orders temporarily, preliminarily, and permanently enjoining the Defendants from interfering with the Collection Agreements and the efforts of Plaintiff to collect the Excluded Receivables.

## COUNT III
### (Declaratory Relief – Bankruptcy Code Sections 105(a) and 362(a) and 28 U.S.C. § 2201)

103.    Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 102 of this Complaint as though fully set forth herein.

104.    This is a claim for declaratory relief and there exists a substantial controversy between Plaintiff and the Defendants of sufficient immediacy and reality to warrant the issuance of declaratory judgment under 28 U.S.C. § 2201.

105.    Section 105(a) of the Bankruptcy Code authorizes the Court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

106.    Section 362(a) of the Bankruptcy Code operates as a stay that protects Plaintiff and property of HDL's estate.

107.    Relief under sections 105(a) and 362(a) is particularly appropriate in this case where Plaintiff requires relief that is necessary in order to preserve the value of the estate.

108.    The Excluded Receivables are property of HDL's bankruptcy estate pursuant to section 541 of the Bankruptcy Code.

109.    As set forth herein, the Alleged Releases did not operate to waive Plaintiff's right to collect upon the Excluded Receivables.

110.    The Excluded Receivables constitute "debt" as that term is defined in the FDCPA, 15 U.S.C. § 1692a(5).

111.    The Defendants' actions have caused real and significant harm to HDL's estate because they interfere with and pose a substantial risk to Plaintiff's ability to recover the Excluded Receivables, which are valuable estate assets.

112.    The Defendants also have made false and misleading statements regarding the Collectors and their authority to collect the Excluded Receivables on behalf of Plaintiff, which are intended to convince numerous patients to refuse to return funds rightfully owed to HDL's estate.

113.    If the Defendants are allowed to interfere with Plaintiff's collection of its interests in the Excluded Receivables, HDL's estate and creditors will suffer the loss of significant estate assets.

114.    Accordingly, Plaintiff respectfully requests that this Court enter a declaratory judgment that (i) the Excluded Receivables are property of HDL's bankruptcy estate; (ii) the Alleged Releases do not constitute waivers of Plaintiff's right to collect upon the Excluded Receivables; (iii) the Excluded Receivables constitute a "debt" within the meaning of the FDCPA; and (iv) Plaintiff shall not be required to cease and desist collection efforts with respect to the Excluded Receivables.

## COUNT IV
### (Avoidance of Constructively Fraudulent Transfer – Bankruptcy Code Sections 548 and 550)

115.    Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 114 of this Complaint as though fully set forth herein

116.    In the alternative, the Liquidating Trustee seeks to avoid the Alleged Releases pursuant to sections 548 and 550 of the Bankruptcy Code.

117.    The transfer of the Alleged Releases to the Consumers represented a transfer of an interest of HDL in property.

118.    HDL did not receive reasonably equivalent value in exchange for the Alleged Releases because what HDL received in exchange for the Alleged Releases was harmful to its financial condition rather than economically beneficial.

119.    As set forth herein, at the time of HDL's transfers of the Alleged Releases to the Consumers, HDL was insolvent or became insolvent as a result of such transfers, HDL was engaged or about to engage in business for which its remaining assets and/or capital were unreasonably small in relation to its business, and/or HDL intended to incur, or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

120.    At all relevant times, HDL had actual creditors holding unsecured claims allowable within the meaning of Bankruptcy Code sections 502, including vendors, landlords, suppliers, lenders and other creditors.

121.    The Alleged Releases were made to or for the benefit of the Consumers.

122.    HDL's transfers of the Alleged Releases should be avoided pursuant to Bankruptcy Code section 548.

123.    Under Bankruptcy Code section 550, Plaintiff may avoid the Alleged Releases from the Consumers as initial, immediate and/or mediate transferees.

## COUNT V
### (Avoidance of Constructively Fraudulent Transfer – Bankruptcy Code Sections 544(b) and 550 and Va. Code Section 55-81)

124.    Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 123 of this Complaint as though fully set forth herein.

125.    In the alternative, the Liquidating Trustee seeks to avoid the Alleged Releases pursuant to sections 544(b) and 550 of the Bankruptcy Code, and Section 55-81 of the Virginia Code.

126.    The transfer of the Alleged Releases to the Consumers represented a transfer of an interest of HDL in property.

127.    HDL did not receive consideration deemed valuable in law in exchange for entering into and incurring obligations under the Alleged Releases because what HDL received in exchange for the Alleged Releases was harmful to its financial condition rather than economically beneficial.

128.    At the time the Alleged Releases were executed, HDL was insolvent as set forth in detail herein.

129.    The Alleged Releases were made to or for the benefit of the Consumers.

130.    HDL's transfers of the Alleged Releases should be avoided pursuant to applicable provisions of the Virginia Fraudulent Transfer Act, including Va. Code § 55-81, and Bankruptcy Code sections 544(b) and 550.

131.    Under Bankruptcy Code section 550, Plaintiff may avoid the Alleged Releases from the Consumers as initial, immediate and/or mediate transferees.

**COUNT VI**
**(Avoidance of Constructively Fraudulent Transfer – Bankruptcy Code Sections 544(b) and 550, Rev. Code of Washington §§ 19.40.011, et seq., 24 Oklahoma Stat. Ann. §§ 112, et seq., and 12 Pennsylvania Consol. Stat. Ann. §§ 5101, et seq.)**

132.    Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 131 of this Complaint as though fully set forth herein.

133.    In the alternative, HDL's transfers of the Alleged Releases to Consumers located in Washington, Oklahoma, and/or Pennsylvania, should be avoided pursuant to applicable provisions of Rev. Code of Washington §§ 19.40.011, et seq., 24 Oklahoma Stat. Ann. §§ 112, et seq., 12 Pennsylvania Consol. Stat. Ann. §§ 5101, et seq., and Bankruptcy Code sections 544(b) and 550.

134.    The transfer of the Alleged Releases to the Consumers represented a transfer of an interest of HDL in property.

135.    HDL did not receive reasonably equivalent value in exchange for the Alleged Releases because what HDL received in exchange for the Alleged Releases was harmful to its financial condition rather than economically beneficial.

136.    As set forth herein, at the time of HDL's transfers of the Alleged Releases to the Consumers, HDL was insolvent or became insolvent as a result of such transfers, HDL was engaged or about to engage in business for which its remaining assets and/or capital were

unreasonably small in relation to its business, and/or HDL intended to incur, or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

137.    At all relevant times, HDL had actual creditors holding unsecured claims allowable within the meaning of Bankruptcy Code sections 502, including vendors, landlords, suppliers, lenders and other creditors.

138.    The Alleged Releases were made to or for the benefit of the Consumers.

139.    Under Bankruptcy Code section 550, Plaintiff may avoid the Alleged Releases from the Consumers as initial, immediate and/or mediate transferees.

**COUNT VII**
**(Injunctive Relief – Bankruptcy Code Sections 105(a) and 362(k) and Bankruptcy Rules 7001(7) and 7065)**

140.    Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 139 of this Complaint as though fully set forth herein.

141.    Through the allegations set forth herein, Plaintiff has established prima facie cases for a finding of contempt, tortious interference with contract, declaratory relief, and avoidance of constructively fraudulent transfers, and therefore has demonstrated a high likelihood of success on the merits.

142.    Plaintiff and HDL's estate will be irreparably harmed if the relief requested herein is not granted.

143.    There is no other adequate remedy at law other than the relief sought herein.

144.    The balancing of the hardships weighs in favor of the Plaintiff, since Plaintiff will be irreparably harmed if the relief requested herein is not granted, whereas Defendants retain the right to move for relief from the automatic stay or file an adversary proceeding in this Court.

145.    Pursuant to sections 105 and 362(k) of the Bankruptcy Code and Bankruptcy Rules 7001(7) and 7065, Plaintiff requests that the Court temporarily, preliminarily, and permanently

enjoin the Defendants from interfering with the Collection Agreements, and the efforts of Plaintiff

to collect the Excluded Receivables.

## VI.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, for the reasons set forth herein, Plaintiff respectfully requests that the

Court enter the following relief:

1)    For Count I of this Complaint, an order holding the Defendants in contempt of court for violating the automatic stay until such time as the Defendants cease interfering with the collection of the Excluded Receivables, and all other damages sustained by Plaintiff are reimbursed by the Defendants;

2)    For Count II of this Complaint, orders temporarily, preliminarily, and permanently enjoining the Defendants from interfering with the Collection Agreements and the efforts of Plaintiff to collect the Excluded Receivables;

3)    For Count III of this Complaint, declaratory judgment that (i) the Excluded Receivables are property of HDL's bankruptcy estate; (ii) the Alleged Releases do not constitute waivers of Plaintiff's right to collect upon the Excluded Receivables; (iii) the Excluded Receivables constitute a "debt" within the meaning of the FDCPA; and (iv) Plaintiff shall not be required to cease and desist collection efforts with respect to the Excluded Receivables;

4)    For Count IV of this Complaint, in the alternative to Count III, awarding Plaintiff judgment, pursuant to sections 544(b) and 550 of the Bankruptcy Code, against the Consumers avoiding the Debtors' transfers of the Alleged Releases;

5)    For Count V of this Complaint, in the alternative to Count III, awarding Plaintiff judgment, pursuant to sections 544(b) and 550 of the Bankruptcy Code and, as applicable, Va. Code § 55-81, against the Consumers avoiding the Debtors' transfers of the Alleged Releases;

6)    For Count VI of this Complaint, in the alternative to Count III, awarding Plaintiff judgment, pursuant to sections 544(b) and 550 of the Bankruptcy Code and, as applicable, Rev. Code of Washington §§ 19.40.011, et seq., 24 Oklahoma Stat. Ann. §§ 112, et seq., and 12 Pennsylvania Consol. Stat. Ann. §§ 5101, et seq., against the Consumers avoiding the Debtors' transfers of the Alleged Releases;

7)    For Count VII of this Complaint, orders temporarily, preliminarily, and permanently enjoining the Defendants from interfering with the Collection Agreements, and the efforts of Plaintiff to collect the Excluded Receivables;

8)   For costs of the suit incurred herein; and

9)   That such other and further relief be awarded as this Court deems just and appropriate.

Dated: August 3, 2016                         Respectfully submitted,

*/s/ Cullen D. Speckhart*
Cullen D. Speckhart (VSB No. 79096)
**WOLCOTT RIVERS GATES**
919 E. Main Street, Richmond, VA 23219
200 Bendix Road, Ste. 300 Virginia Beach, VA 23452
Telephone:      (757) 497-6633
Direct:          (757) 470-5566
Email: cspeckhart@wolriv.com

*Counsel to Richard Arrowsmith, Liquidating Trustee of the HDL Liquidating Trust*

Richard S. Kanowitz (admitted *pro hac vice*)
Evan M. Lazerowitz (*pro hac vice* to be filed)
**COOLEY LLP**
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Email: rkanowitz@cooley.com
Email: elazerowitz@cooley.com

*Counsel to Richard Arrowsmith, Liquidating Trustee, and the Liquidating Trust Oversight Committee.*

## VERIFICATION

I, Richard Arrowsmith, hereby verify, pursuant to 28 U.S.C. § 1746, that I am the Liquidating Trustee of the HDL Liquidating Trust, that in my capacity as the Liquidating Trustee, I am familiar with the business operations of the Debtors and the books and records of the Debtors, that I have read the allegations set forth above in the Verified Complaint, and that to the best of my information and belief such, representations are true and accurate. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

By:    _/s/ Richard Arrowsmith_____
       Richard Arrowsmith
       Liquidating Trustee of the HDL
       Liquidating Trust