THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| IN RE: | HEALTH DIAGNOSTICS LABORATORY, *INC., et al.*, Debtors. | Case No. 15-32919-KRH Chapter 11 |

_____

RICHARD ARROWSMITH, as Liquidating
Trustee of the HDL Liquidating Trust.,

                    Plaintiff,

v.                                                                      APN No. 16-03252

LEMBERG LAW, LLC, *et al.*,

                    Defendants.

_____

## <u>MEMORANDUM OPINION</u>

        Before the Court in this adversary proceeding is a motion to dismiss filed by Lemberg

Law, LLC ("Lemberg Law") and the Consumers[1] (collectively, the "Defendants") under

Bankruptcy Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rule(s)"), which incorporates Civil Rule 12(b)(6) of the Federal Rules of Civil Procedure (the

"Civil Rule(s)"), for to failure to state a claim upon which relief can be granted (the "Motion to

Dismiss").  The Motion to Dismiss seeks an order from this Court to dismiss the Verified

Complaint (the "Complaint") of Richard Arrowsmith, in his capacity as Liquidating Trustee of

_____

[1] The "Consumers" include: Eileen Arendt; Linda Cancel; Emily Reed; Leah Volesky; Cynthia Porter; Jolene Wixom; Dani Schurger; Lara Tebo; Tara Roecks; Kelly Porter; Terri Barbano; Calico Svendsen; Nicolette Caldwell; Lorinne Chance; Toni Merriot; Tiffanie Papich; Christina Lagrou; Barbara Marks; Kimberly Dixon; Korynne Bray; and Jospeh Delfino.

1

the HDL Liquidating Trust (the "Liquidating Trustee" or "Plaintiff").[2]   The issue before the

Court is whether the Liquidating Trustee's Complaint pleads sufficient facts to present plausible

causes of action to survive the Motion to Dismiss.  A hearing on the Motion to Dismiss was held

on October 20, 2016 (the "Hearing").   At the Hearing, the Court took the Motion to Dismiss

under advisement.  For the reasons set forth in this Memorandum Opinion, the Court denies the

Motion to Dismiss.

### Procedural Facts

On June 7, 2015 (the "Petition Date"), the Debtors commenced these bankruptcy Cases

by each filing separate voluntary petitions for relief under chapter 11 of Title 11 of the United

States Code (the "Bankruptcy Code")[3] in the United States Bankruptcy Court for the Eastern

District of Virginia (the "Court").  After the Petition Date, the Debtors continued to operate and

manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.   On June 9, 2015, the Court entered an order authorizing the joint

administration of the chapter 11 Cases.  On June 16, 2015, the United States Trustee for the

Eastern District of Virginia appointed a statutory committee of unsecured creditors (the

"Committee").[4]   The Court confirmed the Debtors' Modified Second Amended Plan of

Liquidation (the "Plan") by order entered May 12, 2016 (the "Confirmation Order").[5]  The HDL

---

[2] The confirmed Modified Second Amended Plan of Liquidation of the Debtors appointed Richard Arrowsmith as the Liquidating Trustee of the HDL Liquidating Trust in the jointly administered chapter 11 cases (the "Cases") of Health Diagnostic Laboratory, Inc., Central Medical Laboratory, LLC, and Integrated Health Leaders, LLC ("HDL" or the "Debtors").  The Liquidating Trustee is the successor for all purposes of the Debtors.

[3] *See* 11 U.S.C. §§ 1101–1174.  All further references to the Bankruptcy Code are to the Bankruptcy Code as codified at 11 U.S.C. §§ 101 *et seq.*

[4] *See* 11 U.S.C. § 1102(a)(1).

[5] *See* Confirmation Order, *In re Health Diagnostic Laboratory, Inc., et al.*, Case No. 15-32919-KRH (Bankr. E.D. Va. Aug. 17, 2016), EFC No. 1095.

Liquidating Trust was formed in accordance with the terms of the Plan on the Effective Date.[6]

Pursuant to the Plan and 11 U.S.C. § 1123, the Liquidating Trustee is the successors of the

Debtors and the Committee.

On September 17, 2015, the Court entered an *Order (I) Approving Asset Purchase*

*Agreement and Authorizing the Sale of Assets of the Debtors Outside the Ordinary Course of*

*Business, (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances*

*and Interest, (III) Authorizing the Assumption and Sale and Assignment of Certain Executory*

*Contracts and Unexpired Leases and (IV) Granting Related Relief* (the "Sale Order") which

approved the Debtors' sale of substantially all of their assets to True Health Diagnostics, LLC

("True Health") under the terms of an Asset Purchase Agreement ("APA").  The sale under the

APA closed on September 29, 2015 (the "Closing Date").  Pursuant to the APA, the Debtors

retained ownership of accounts receivable aged 180 days or more as of the Closing Date (the

"Excluded Receivables").

HDL operated an accredited, full service clinical laboratory that provided testing of

biomarkers for the indication of risk for cardiovascular disease, diabetes, and other illnesses.

HDL's testing services offered physicians the ability to detect major health issues in patients

before potentially life-threatening events occurred.  HDL processed lab tests it received from

physicians all around the country.  The Excluded Receivables include amounts owed to HDL by

patients for laboratory testing (the "Excluded Patient Receivables").  The Excluded Patient

Receivables are classified by the Liquidating Trustee as: (1) receivables due from patients who

received monies in the form of reimbursement from their insurance carriers (the "Paid to Patient

---

[6] The Plan became effective on May 12, 2016 (the "Effective Date").  *See* Notice of Confirmation of Chapter 11 Plan at 1, *In re Health Diagnostic Laboratories, Inc.*, No. 15-32919 (Bankr. E.D. Va. May 14, 2016), ECF No. 1106.

Receivables"); (2) receivables due from patients who are solely responsible to pay for laboratory testing they received from HDL; (3) receivables due from patients who are responsible to pay for laboratory testing because they have not yet met their insurance deductibles; and (4) receivables that are due on account of insurance carrier denials.

On or about July 28, 2015, the Liquidating Trustee entered into collection agreements with Monterey Financial Services, LLC, d/b/a Monterey Collections ("Monterey") and other collection agents (collectively, the "Collectors") to pursue collection of certain Excluded Patient Receivables owned by HDL (the "Collection Agreements"). Since HDL engaged the Collectors, the Collectors have transmitted notices to certain patients for whom HDL had performed laboratory testing.

In January 2015, True Health sent cease and desist letters to HDL requesting HDL and related parties to stop collecting the Excluded Patient Receivables. The Liquidating Trustee responded by filing an adversary proceeding[7] against True Health and Jeffrey P. "Boomer" Cornwell (collectively, the "True Health Defendants") and sought an injunction prohibiting the True Health Defendants from interfering with the efforts of the Liquidating Trustee and the Collectors to collect the Excluded Patient Receivables. On February 6 and 12, 2016, the Court entered injunction orders (the "Injunction Orders") enjoining the True Health Defendants from taking any actions to interfere with HDL's collection of the Excluded Patient Receivables. In the Injunction Orders, the Court held that interference with the efforts of the bankruptcy estate to collect the Excluded Receivables constituted willful violations of section 362(a)(3) of the Bankruptcy Code. No party appealed the Injunction Orders.

---

[7] *See* Verified Complaint, *Health Diagnostic Laboratory, Inc. v. True Health Diagnostics, LLC, et al. (In re Health Diagnostic Laboratory, Inc.)*, No. 16-03011-KRH (Feb. 1, 2016), ECF No. 1.

Nevertheless, the Liquidating Trustee continued to experience difficulties collecting the Excluded Receivables even after the Injunction Orders had been entered.  On June 3, 2016, the Liquidating Trustee filed in the Debtors' bankruptcy Cases a *Motion to (A) Enforce the Automatic Stay to Certain Accounts Receivable Constituting Property of the Estate; (B) Extending the Automatic Stay to Collection Entities Acting at the Aid and Direction of the Liquidating Trustee for Purposes of Collecting Such Property for the Benefit of Creditors; and (C) Granting Related Relief under 11 U.S.C. § 105* (the "Motion to Enforce and Extend"). Lemberg Law filed an objection to the Motion to Enforce and Extend and appeared at a hearing conducted on June 6, 2016.  The Court approved the Motion to Enforce and Extend over the objection of Lemberg Law, but stated that the order would not prejudice any party's ability to "file a motion for relief from the automatic stay" or "file a complaint in this Court" in the event of a "violation of the Fair [Debt] Collection Practices Act."  On July 1, 2016, the Court entered the *Order on Motion to (A) Enforce the Automatic Stay To Certain Accounts Receivable Constituting Property of the Estate, (B) Extending the Automatic stay to Collection Entities Acting at the Aid and Direction of the Liquidating Trustee for Purposes of Collecting Such Property for the Benefit of Creditors, and (C) Granting Related Relief Under 11 U.S.C. §105* (the "Stay Order") which enforced and extended the automatic stay of 11 U.S.C. § 362 "to protect the Excluded Receivables from any and all interference and assertion of control by any party other than the Liquidating Trustee."  The Stay Order also protected the "Collectors from any and all claims, threats, and actions initiated against the Collectors in respect of the Collectors' work in assist[ing] . . . the Liquidating Trustee."  No party appealed the Stay Order.

On August 3, 2016, the Liquidating Trustee filed the Complaint against the Defendants. Additionally, the Liquidating Trustee filed a *Motion of Plaintiff for an Order to Maintain the*

*Status Quo Ante Pending Final Determination on Merits of Complaint* (the "Motion for Preliminary Injunction"). On August 30, 2016, the Court entered the *Order Maintaining the Status Quo Ante Pending Final Determination on Merits of Complaint* (the "Status Quo Order"). On September, 13, 2016, the Defendants appealed the Status Quo Order to the District Court for the Eastern District of Virginia (the "District Court"). On September 21, 2016, the Defendants filed their Motion to Dismiss. On October 13, 2016, the Liquidating Trustee filed *Liquidating Trustee's Opposition to Motion to Dismiss the Complaint by Lemberg Law, LLC and the Consumers* (the "Liquidating Trustee's Objection"). On October 19, 2016, the Defendants filed *Reply Memorandum of Law in Support of Motion by Lemberg Law and the Consumers to Dismiss the Complaint* (the "Defendants' Reply").

At the Hearing, the Court questioned whether it had jurisdiction to hear the Motion to Dismiss since the District Court had granted the Defendants' appeal of the Status Quo Order,[8] but allowed the parties to address their arguments on the Motion to Dismiss. On February 16, 2017, the United States District Court for the Eastern District of Virginia entered an *Order Vacating the Preliminary Injunction Order and Remanding the Case* (the "District Court Order Vacating the Status Quo Order").[9] Now that the adversary proceeding has been remanded by the District Court, this Court has been reinstated with jurisdiction over the Motion to Dismiss.

### Jurisdiction and Venue

The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b) and the General Order of Reference from the United States District

---

[8] *See generally Grand Jury Proceedings Under Seal v. U.S.*, 947 F.2d 1188, 1190 (4th Cir. 1991) ("The general rule is that the filing of a timely and sufficient notice of appeal immediately transfers jurisdiction of all matters relating to the appeal from the district court to the court of appeals.") (internal citation omitted).

[9] *See* Order, *Lemberg Law, LLC, et al. v. Richard Arrowsmith, Liquidating Trustee of the HDL Liquidating Trust*, No. 3:16-cv-00763-JAG (Feb. 2, 2017), ECF No. 26.

Court for the Eastern District of Virginia dated August 15, 1984.  Certain of the claims set forth

in the Complaint are core proceedings under 28 U.S.C. § 157(b)(2)(A), (G), (H), and (O).  To the

extent that some claims asserted by the Liquidating Trustee may be non-core proceedings as

described in 28 U.S.C. § 157(b)(2), such proceedings are "related to" the bankruptcy case and

the Court may issue proposed findings of fact and conclusions of law pursuant to 28 U.S.C.

§ 157(c)(1).  Venue is appropriate in this Court pursuant to 28 U.S.C. § 1408.

### Parties' Allegations

In the Complaint, the Liquidating Trustee alleges that the Defendants interfered with the

Liquidating Trustee's efforts to collect certain of the Excluded Patient Receivables.  Specifically,

the Liquidating Trustee alleges that Lemberg Law has threatened to sue the Collectors for their

activities as debt collectors for the Debtors' bankruptcy estates and has sent correspondence

designed to hamper the Liquidating Trustee's efforts to collect property of the estate; that

Lemberg Law has used physician practices as a means to obtain more clients and further

interfere with collections of receivables that constitute property of HDL's estate; and that various

parties who may be associated with Lemberg Law have issued consumer complaints to the

Attorney General of the State of Washington and Attorney General of the State of Texas, and

have made written advances to the U.S. Trustee by enclosing copies of letters directed to

Monterey.  In the Complaint, the Liquidating Trustee seeks a determination from this Court on

the following counts: 1) a finding of contempt under 11 U.S.C. §§ 105(a), 362(a) (the "First

Count") ; 2) tortious interference with contract (the "Second Count"); 3) declaratory relief under

11 U.S.C. §§ 105(a), 362(a) and 28 U.S.C. § 2201 (the "Third Count"); 4) avoidance of

fraudulent transfers under 11 U.S.C. §§ 548, 550 (the "Fourth Count"); 5) avoidance of

constructively fraudulent transfers under 11 U.S.C. §§ 544(b), 550 and Va. Code Ann. § 55-81

(the "Fifth Count"); 6) avoidance of constructively fraudulent transfers 11 U.S.C. §§ 544(b), 550, Wash. Rev. Code §§ 19.40.011, *et seq.*, Okla. Stat. §§ 112, *et seq.*, and 12 Pa. Cons. Stat. §§ 5101, *et seq.* (the "Sixth Count"); and 7) injunctive relief under 11 U.S.C. §§ 105(a), 362(k) and Fed. R. Bankr. P. 7001(7) and 7065 (the "Seventh Count").

In response, the Defendants argue that the Liquidating Trustee failed to allege facts that support the First through Sixth Counts and due to that failure, there are no grounds to grant an injunction under the Seventh Count.

The Court will address the sufficiency of the alleged facts for each count in the Complaint below.

## CONCLUSIONS OF LAW

### Standard of Review

Bankruptcy Rule 7012 makes Civil Rule 12(b) applicable in adversary proceedings. Civil Rule 12(b)(6) allows a party to file a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6). A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).[10] For a complaint to survive a Bankruptcy Rule 7012(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must contain sufficient factual allegations "to raise a right to relief above the speculative level" and "nudge [the] claims across the line from conceivable to plausible." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555, 570 (2007)). "The plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Id.* (quoting

---

[10] Bankruptcy Rule 7008 makes Civil Rule 8 applicable in adversary proceedings. *See* Fed. R. Bankr. P. 7008.

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).    The Court must take all of the Liquidating Trustee's factual allegations in the Complaint as true.    *See Andon, LLC v. City of Newport News, Va.*, 813 F.3d 510, 514 (4th Cir. 2016) (citing *Bass v. E.I. DuPont de Nemours & Co.,* 324 F.3d 761, 764 (4th Cir. 2003)).    The court need not accept as true allegations that are conclusory in nature or lack factual support, unwarranted deductions of fact, arguments asserted in the complaint, or unreasonable inferences.    *See E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

### Plaintiff's First Count: Contempt under 11 U.S.C. §§ 105(a), 362(a)

In the Liquidating Trustee's First Count, he asks for the Court to find the Defendants in contempt under 11 U.S.C. §§ 105(a), 362(a).    Section 362(3)(a) of the Bankruptcy Code prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[11] . . . ."    11 U.S.C. § 362(a)(3).    Section 362(a)(3) of the Bankruptcy Code "stays any action, *whether against the debtor or third-parties,* to obtain possession or to exercise control over property of the debtor."    *A.H. Robins, Inc. v. Piccinin (In re A.H. Robins, Inc.),* 788 F.2d 994, 1001 (4th Cir. 1986) (emphasis in original).    A dispute over a debtor's property right does not undercut the effect of the automatic stay or the obligations imposed on parties by the Bankruptcy Code.    *See In re Daya Medicals, Inc.*, 560 B.R. 855, 858-59 (Bankr. S.D. Fla. 2016) ("To the contrary, where it is unclear whether a debtor in bankruptcy has an interest in property, parties must act with caution.").

Section 362(k)(1) of the Bankruptcy Code provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs

---

[11] "Property of the bankruptcy estate is comprised of 'all legal or equitable interests of the debtor in property as of the commencement of the case.'"    *Phillips v. Diecast Marketing Innovations, LLC, et al. (In re Collecting Concepts, Inc.)*, No. 99-60268-T, 99-6003-T, 2000 WL 1191026, *at 3 (Bankr. E.D. Va. Feb. 28, 2000) (citing 11 U.S.C. § 541(a)(1)).    It includes all property transferred under the Plan to the Liquidating Trust that is now being administered by under the Liquidating Trustee.

and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."   11

U.S.C. § 362(a).  To recover under section 362(k) of the Bankruptcy Code, a party must show

"(1) that the defendant violated the stay imposed by § 362(a), (2) that the violation was *willful,*

and (3) that the plaintiff was injured by the violation."  *Houck v. Substitute Trustee Services,*

*Inc.*, 791 F.3d 473, 484 (4th Cir. 2015) (citing *Garden v. Cent. Neb. Hous. Corp.,* 719 F.3d 899,

906 (8th Cir. 2013)); *see also In re Gordon Prop., LLC*, 460 B.R. 681, 690 (Bankr. E.D. Va.

2011) (discussing standard for sanctions for willful violations of the automatic stay). "To

constitute a willful act, the creditor need not act with specific intent but must only commit an

intentional act with knowledge of the automatic stay." *See In re Strumpf*, 37 F.3d 155, 159 (4th

Cir. 1994).

Lastly, section 105(a) of the Bankruptcy Code provides that bankruptcy courts "may

issue any order, process, or judgment that is necessary or appropriate to carry out the provisions

of this title." 11 U.S.C. § 105(a). This section provides bankruptcy courts with a "broad grant of

power . . ." to grant "extensive equitable powers that bankruptcy courts need in order to be able

to perform their statutory duties." *Caesars Entm't Operating Co, Inc. v. Bokf, N.A., et al. (In re*

*Caesars Entm't Operating Co., Inc.)*, 808 F.3d 1186, 1188 (7th Cir. 2015.

In the Complaint, the Liquidating Trustee alleges that HDL filed for bankruptcy on the

Petition Date.  Further, the Liquidating Trustee alleges that the Excluded Patient Receivables are

property of HDL's bankruptcy estate.  The Consumers are alleged to have received Paid to

Patient Receivables.  The Liquidating Trustee further alleges that the Defendants colluded with

one another and numerous physicians to convince patients who received Paid to Patient

Receivables not to pay those Excluded Patient Receivables to HDL and made false statements

regarding HDL's right to collect the Excluded Patient Receivables.  The Liquidating Trustee

alleges that additional collusive acts include threatening to sue the Collectors and demanding that they cease and desist their collection efforts, and dispatching correspondence designed to hamper the Plaintiff's efforts to collect property of the estate. These alleged facts, which the Court must accept as true, are sufficient to allege a violation of section 362(a)(3) of the Bankruptcy Code.

The Liquidating Trustee has properly alleged that the Defendants' actions were willful for purposes of section 362(k) of the Bankruptcy Code. The Liquidating Trustee alleges that the Defendants opposed the Motion to Enforce and Extend in the underlying HDL bankruptcy case. This is sufficient to show that the Defendants acted with knowledge that the automatic stay was in effect with regards to the Excluded Patient Receivables.

Finally, the Liquidating Trustee alleges that he suffered damages as a result of the Defendants' violation of the automatic stay. The Liquidating Trustee alleges that the Defendants' actions have hampered his ability to collect estate property, which he is required to do under HDL's Plan.

The Defendants' argument that the Liquidating Trustee failed to demonstrate any "act" taken by the Defendants to obtain possession or control of property of the estate is without moment. The Court must accept as true, for purposes of the Motion to Dismiss, the allegations of the Liquidating Trustee that the Defendants threatened to sue the Collectors and sent letters demanding the Collectors to cease and desist their efforts on behalf of HDL to collect the Excluded Receivables. The Court finds that the Liquidating Trustee has pled sufficient facts to demonstrate a plausible cause of action against the Defendants for a willful violation of the stay.

## Plaintiff's Second Count: Tortious Interference with Contract

The Liquidating Trustee's Second Count in the Complaint asserts a cause of action for tortious interference with contract and business expectancy. As an initial matter, the parties

11

dispute which state's law governs for the Second Count.  The Liquidating Trustee maintains that

Virginia state law applies, while the Defendants contend that Washington state law applies.

In this case, Virginia's choice of law provisions govern which state law applies because

the Court is located in Virginia.  *See In re Merritt Dredging Co., Inc.*, 839 F.2d 203, 205-206

(4th Cir. 1988) (holding that the *Klaxon* rule, which requires a federal court to apply the choice

of law provisions of the state in which it sits, applies in bankruptcy cases).  Under Virginia's

choice of law principles, courts apply the law of the place "where the last event necessary to

make an act liable for an alleged tort takes place."  *Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041,

1044 (4th Cir. 1986) (quoting *Miller v. Holiday Inns, Inc.,* 436 F. Supp. 460, 462 (E.D. Va.

1977)).

The Defendants argue that under *General Assur. Of America, Inc. v. Overby-Seawell Co.*,

the occurrence of plaintiff's injury marks the last event necessary to establish liability, not the

place where the plaintiff is located and damaged, and thus Washington law applies.  *See General*

*Assur. Of America, Inc. v. Overby-Seawell Co.*, 533 F. App'x 200, 206 (4th Cir. 2013) ("We will

not apply the law of a state in which only the effect of the wrongful act, such as economic

impact, is felt.").  The Defendants contend that, assuming there was an interference with the

Collections Agreements or the Paid to Patient Receivables, the last event necessary for liability

took place in Washington because the Consumers reside there.

The Liquidating Trustee contends that Virginia law should apply because the last act

necessary to establish liability for tortious inference occurred in Virginia.  The Liquidating

Trustee argues that the Defendants interfered with the Collections Agreements, which are

contracts between HDL, a Virginia resident entity, and the Collectors.  The Liquidating Trustee

concludes that the last act under the contracts was for the Collectors to remit the collected

12

Excluded Patient Receivables to HDL in Virginia, thus the last event necessary for liability occurred in Virginia.  In addition, the Liquidating Trustee contends that in regards to the Paid to Patient Receivables, it had a business expectancy to be paid in Virginia.

The Second Count of the Complaint seeks recovery for tortious interference in regards to the Collection Agreements HDL had with the Collectors.  Under the Collection Agreements, the Collectors had an obligation to remit any Excluded Receivables that they received to HDL in Virginia.  Generally, the place of performance for payment of obligations under a contract governs tortious interference claims.  *See Ford Motor Co. v. Nat'l Indem. Co.*, 972 F. Supp. 2d 850, 858 (E.D. Va. 2013).  The business expectancy held by HDL was that of receiving the Paid to Patient Receivables in Virginia.  Thus, when the Paid to Patient Receivables were not paid, the last action causing harm to HDL occurred in Virginia.  Therefore, the Court concludes that Virginia law should apply in this matter.

Under the law of Virginia, a party must establish the four elements in order to make a *prima facie* case for tortious interference with contract:

> (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Schaecher v. Bouffault*, 290 Va. 83, 106 (2015) (citing *Chaves v. Johnson*, 230 Va. 112, 120 (1985)).  In "the prospective economic advantage context a plaintiff must also demonstrate that the defendant employed 'improper methods.'"  *Commerce Funding Corp. v. Worldwide Sec. Services Corp.¸* 249 F.3d 204, 214 (4th Cir. 2001) (citing *Maximus, Inc. v. Lockheed Info. Sys., Inc.,* 254 Va. 408 (1997)).

The Liquidating Trustee alleges that the Collection Agreements are valid contracts between HDL and the Collectors to collect the Paid to Patient Receivables.  The Liquidating

Trustee alleges that Defendants had actual knowledge of the Collection Agreements, as the collection letter sent to the Consumers represented that the Collectors were seeking money on behalf of HDL.  The Liquidating Trustee alleges that the Defendants intentionally interfered with the Collectors' contractual duty to collect the Excluded Patient Receivables by threatening to sue the Collectors and by directing physicians, groups of physicians, and related entities to instruct their patients to disregard the Collectors' requests for payment of the Paid to Patient Receivables. Finally, the Liquidating Trustee alleges that the interference caused him to suffer damages by hampering his ability to collect property of the estate consistent with his duties under the Plan.

In addition to the forgoing facts, the Liquidating Trustee also alleges that the Excluded Patient Receivables are amounts owed to HDL by patients for laboratory testing based on either valid contracts or business expectancies.  The Liquidating Trustee has alleged that the Defendants employed "improper means" to frustrate his ability to collect property of the estate by threatening litigation against the Collectors for attempting to collect the Paid to Patient Receivables in violation of section 362 of the Bankruptcy Code and the Stay Order.  For all the foregoing reasons, the Court finds that the Liquidating Trustee has adequately pled plausible causes of action for tortious interference with contract and business expectancies.

### Plaintiff's Third Count: Declaratory Relief under 11 U.S.C. §§ 105(a), 362(a) and 28 U.S.C. § 2201

The Third Count of the Complaint requests declaratory relief confirming: (i) the Excluded Patient Receivables are property of HDL's bankruptcy estate; (ii) certain Alleged Releases do not constitute waivers of Plaintiff's right to collect upon the Excluded Patient Receivables; (iii) the Excluded Patient Receivables constitute a "debt" within the meaning of the FDCPA; and (iv) Plaintiff shall not be required to cease and desist collection efforts with respect to the Excluded Patient Receivables.

A court may award declaratory relief under 28 U.S.C. § 2201 when there is an "actual controversy," Volvo *Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592-93 (4th Cir. 2004), and the Court finds that "(i) it will serve a useful purpose in clarifying and settling the legal relations in issue, and (ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994) (internal quotation and citation omitted). "In a bankruptcy context, the court has authority to issue declaratory judgments on matters concerning the administration of the estate." *In re Abell*, 549 B.R. 631, 649 (Bankr. D. Md. 2016).

The Liquidating Trustee alleges that the Excluded Patient Receivables are an estate asset that the Liquidating Trustee has an obligation to collect. Further, the Liquidating Trustee asserts that the Collectors sent letters to the Consumers in an attempt to collect the Paid to Patient Receivables on his behalf. The Liquidating Trustee attached to the Complaint,[12] as a representative sample, a letter from one of the Consumers disputing that the Excluded Patient Receivable was a "debt" she owed to HDL. The Liquidating Trustee asserts that the Consumers are disputing that the Excluded Patient Receivables are debts owed to HDL and, alternatively, that HDL executed certain Alleged Releases (as defined in the Complaint).

The Defendants argue that a declaratory judgment action is not appropriate because there is not an actual case or controversy and the Liquidating Trustee seeks to adjudicate the rights of parties not currently before the Court. The facts pled by the Liquidating Trustee clearly indicate a dispute with regards to material facts related to the collection of the Excluded Patient Receivables. A finding that the Excluded Patient Receivables are property of the estate is necessary for a determination whether the automatic stay applies. The Court is not being asked

---

[12] A court may consider documents that are attached to the Complaint that are exhibits. *See* Fed. R. Civ. P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

to adjudicate the interests of parties not currently before it and whose interests are not adequately represented.[13]  *See In re Schimmels,* 127 F.3d 875, 881 (9th Cir. 1997) (reasoning that a declaratory judgment can bind non-parties in subsequent lawsuits under res judicata if those nonparties' interests are "so closely aligned as to be virtually representative.").  The Court concludes that the Liquidating Trustee has properly pled a plausible cause of action for declaratory judgment.  Therefore, the Motion to Dismiss will be denied with respect to the Third Count.

## Plaintiff's Fourth Count: Avoidance of Constructively Fraudulent Transfers under 11 U.S.C. §§ 548, 550

The Fourth Count of the Complaint seeks the avoidance of fraudulent transfers under 11 U.S.C. § 548, 550.  Claims for the avoidance of constructive fraudulent conveyances are governed by the general pleading standard under Civil Rule 8.  *See* Fed R. Civ. P. 8(a); *see also In re Bernard Madoff Inv. Sec. LLC*, 458 B.R. 87, 110-11 (Bankr. S.D.N.Y. 2011) (applying Civil Rule 8(a) pleading standards to claims alleged under 11 U.S.C. § 548(a)); *In re Caremerica, Inc.*, No. L-08-00157-8-JRL, 2009 WL 22535241, *at 6 (Bankr. E.D.N.C. July 28, 2009) ("Rather, § 548(a)(1)(B) claims must satisfy Rule 8(a) and the heightened pleading standard introduced in *Twombly* and *Iqbal.*  It follows that claims to avoid constructively fraudulent transfers must assert factual allegations which show that relief is plausible.").

Section 548(a)(1)(B) of the Bankruptcy Code allows the trustee to avoid any transfer of "an interest of the debtor in property" made within two years before the date of filing the petition if the following elements are established: (1) the "[d]ebtor must have "received less than a reasonably equivalent value in exchange for such transfer . . .;" and (2) "the transfer must either have been made while Debtor was insolvent, or have itself rendered Debtor insolvent."  *In re*

---

[13] *See supra* note 1.

*Southern Textile Knitters*, 65 Fed. Appx. 426, 436 (4th Cir. 2003); *see also* 11 U.S.C.

§ 548(a)(1)(B).  While "interest of the debtor in property" is not defined in the Bankruptcy Code,

it has been interpreted to mean "property belongs to the debtor . . . if the transfer will deprive the

bankruptcy estate of something which could otherwise be used to satisfy the claims of creditors."

*In re Merchants Grain by & Through Mahern,* 93 F.3d 1347, 1352 (7th Cir. 1996) (internal

quotation omitted).  The term "transfer," on the other hand, is defined in the Bankruptcy Code.

*See* 28 U.S.C. § 101(54).  The defined term has been interpreted broadly to encompass an array

of transactions in which the debtor may have engaged.  *See In re Whitely*, 848 F.3d 205, 208-09

(4th Cir. 2017).  Courts have consistently held that a "transfer" occurs when a debtor forgives

indebtedness owed to it by a third party.  *See generally Aphton Corp. v. Sonafi Pasteur (In re*

*Aphton Corp.),* 423 B.R. 76 (Bankr. D. Del. 2010); *Short v. Groves (In re Short),* No. 08-5232,

2009 WL 2563469, *at 3 (Bankr. D. Kan. Aug. 18, 2009) ("Reduction of the amount due to

debtor on commercial promissory notes is a transfer."); *accord Grochocinsky v. Reliant*

*Interactive Media Corp. (In re General Search.com),* 322 B.R. 836 (Bankr. N.D. Ill. 2005)

(determining that the debtor's forgiveness of $200,000 owing to the debtor under the terms of a

promissory note constituted a "transfer" of the debtor's interest in property that would have

otherwise been available to satisfy creditor claims following the filing of its bankruptcy case).

The trustee is entitled to collect the value of the benefit of such transfer in property from the

initial transferee.  *See* 11 U.S.C. § 550(a).

The Defendants argue that the Fourth Count fails because: (1) the Complaint did not

provide dates, amounts, and names of transferees; and (2) there was no "transfer" of an "interest

in property" because the Liquidating Trustee did not allege that the Consumers received Paid to

Patient Receivables.  The Defendants' first argument fails.  The heightened pleading standard

under Civil Rule 9 for pleading fraud is not applicable to constructive fraudulent transfer claims under 11 U.S.C. § 548(a)(1)(B).  Only the statutory elements need be pled.  The Defendants' second argument fails as well.  Paragraph 66 of the Complaint alleges that "most of the accounts assigned to the Collectors represent amounts owed by the Consumers to HDL as Paid to Patient Receivables."  Complaint at 12, ¶ 66.

In the Complaint, the Liquidating Trustee alleges the Consumers are contending that HDL transferred a release to them in marketing materials provided by representatives employed by HDL's outside marketing agency.  The Liquidating Trustee alleges that HDL received nothing in exchange for these Alleged Releases.  Further, the Liquidating Trustee alleges that at all applicable times HDL was insolvent because it had unreasonably small capital for its business, and incurred or should have known it was incurring debts that it lacked the ability to pay.  The Court finds that this is sufficient to make a *prima facie* case under 11 U.S.C. § 548 and thus states a plausible cause of action.  The Motion to Dismiss is denied in regards to the Fourth Count.

**Plaintiff's Fifth and Sixth Counts: Avoidance of Constructively Fraudulent Transfers under 11 U.S.C. §§ 544(b), 550 and Va. Code Ann. § 55-81 and Avoidance of Constructively Fraudulent Transfers under 11 U.S.C. §§ 544(b), 550, Wash. Rev. Code §§ 19.40.011, et seq., Okla. Stat. §§ 112, et seq., and 12 Pa. Cons. Stat. §§ 5101 et seq.**

The Fifth Count is for the avoidance of constructive fraudulent transfers under Virginia law.  The Sixth Count of the Complaint seeks recovery of constructive fraudulent transfers under Washington, Oklahoma, and Pennsylvania law.

Section 544(b) of the Bankruptcy Code authorizes the trustee to avoid "any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim . . ."  11 U.S.C. § 544(b)(1).  The statute allows the trustee to utilize laws available to a creditor to avoid a debtor's transfer of property

outside of bankruptcy, such as state creditors' rights statutes.  *See generally In re Meyer*, 244 F.3d 352, 355 (4th Cir. 2001) (analyzing avoidance action brought by chapter 7 trustee under Virginia law).

Virginia Code § 55-81 allows a creditor to avoid voluntary conveyances.  The statute provides in the pertinent part:

> Every gift, conveyance, assignment, transfer or charge which is not upon consideration deemed valuable in law, or which is upon consideration of marriage, by an insolvent transferor, or by a transferor who is thereby rendered insolvent, shall be void as to creditors whose debts shall have been contracted at the time it was made . . . .

Va. Code Ann. § 55-81.  "The requirement of consideration deemed valuable at law . . . is a substantially lower standard than that required under 11 U.S.C. § 548(a)(1)(B).  This Court has held that '[if] something [is] gained, that is enough to prevent avoidance of the transaction under Virginia Code § 55–81.'"  *In re LandAmerica Fin. Group, Inc.*, No. 10-03819-KRH, 2014 WL 2069651, *at 5 (Bankr. E.D. Va. May 18, 2014) (quoting *In re James River Coal Co.*, 360 B.R. 139, 167 (Bankr. E.D. Va.2007) (quoting *C–T of Virginia v. Euroshoe Associates*, 762 F. Supp. 675 (W.D. Va. 1991), *aff'd*, 953 F.2d 637 (4th Cir. 1992))).

Washington, Oklahoma, and Pennsylvania have all adopted the Uniform Fraudulent Transfer Act ("UFTA"), which is substantively similar to section 548 of the Bankruptcy Code. *See* 12 Pa. Cons. Stat. §§ 5101 *et seq.*; Okla. Stat. §§ 112, *et seq.*; Wash. Rev. Code §§ 19.40.011, *et seq.*; *see also In re LLS America, LLC*, 520 B.R. 841, 846-48 (E.D. Wash. 2014) (applying the same analysis for constructive fraudulent transfer claims under section 548 of the Bankruptcy Code and Washington's UFTA); *Fidelity Bond and Mortg. Co. v. Brand*, 371 B.R. 708, 719 (E.D. Penn. 2007) ("The constructive fraud provisions of the PUFTA and the Bankruptcy Code should be construed and interpreted uniformly because consistency between the two statutes was a goal of those who drafted the PUFTA and who have since interpreted it.");

*In re Tiger Petroleum Co.*, 319 B.R. 225, 232 (Bankr. N.D. Okla. 2004) ("The language of the UFTA and § 548 are nearly identical; the only significant difference being a longer statute of limitations under Oklahoma law.") (footnote omitted).

The Liquidating Trustee repeats in the Fifth and Sixth Counts the allegations he made in the Fourth Count with respect to the Alleged Releases. To the extent that the Defendants raise the same arguments for dismissal of the Fifth and Sixth Counts of the Complaint as they did for the Fourth Count, their arguments must be denied. The alleged facts are sufficient to plead a plausible cause of action under the constructive fraudulent transfer statutes of Virginia, Washington, Oklahoma, and Pennsylvania. Therefore, the Court denies the Motion to Dismiss with respect to the Fifth and Sixth Counts.

### Plaintiff's Seventh Count: Injunctive Relief under
### 11 U.S.C. §§ 105(a), 362(k) and Fed. R. Bankr. P. 7001(7) and 7065

The Liquidating Trustee's Seventh Count in the Complaint is for temporary, preliminary, and permanent injunctions to enjoin the Defendants from interfering with the Collection Agreements and the efforts of Plaintiff to collect the Excluded Receivables.

Section 105(a) of the Bankruptcy Code provides that bankruptcy courts "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). This section provides bankruptcy courts with a "broad grant of power . . ." to grant "extensive equitable powers that bankruptcy courts need in order to be able to perform their statutory duties." *Caesars Entm't Operating Co, Inc. v. Bokf, N.A., et al. (In re Caesars Entm't Operating Co., Inc.)*, 808 F.3d 1186, 1188 (7th Cir. 2015). This power includes granting injunctions. *See A.H. Robins, Inc. v. Piccinin (In re A.H. Robins, Inc.)*, 788 F.2d at 1003.

Under Bankruptcy Rule 7001(7), a request for an injunction must be brought in an adversary proceeding. *See* Fed. R. Bankr. P. 7001(7). Bankruptcy Rule 7065 makes Civil Rule 65 applicable to injunction proceedings. *See* Fed. R. Bankr. P. 7065. The factors that a court must consider when granting either a temporary, preliminary, or permanent injunction are substantively similar. A court must consider: (1) likelihood of success on the merits; (2) likelihood of the movant suffering irreparable harm; (3) the balance of hardships must be in the movant's favor; and (4) the injunction is in the public interest. *Compare Metro. Reg'l Info. Systems, Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 595 (4th Cir. 2013) ("Parties seeking a preliminary injunction must demonstrate that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm, (3) the balance of hardships tips in their favor, and (4) the injunction is in the public interest."), *with Legend Night Club v. Miller*, 637 F.3d 291, 297 (4th Cir. 2011) ("[A] plaintiff seeking a permanent injunction must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.") (quoting *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006)).

The Liquidating Trustee has adequately stated a plausible cause of action under the first six counts. Assuming the Liquidating Trustee proves at trial that he will be unable to fulfill his duties under the Plan and recover estate property if the injunction is not granted, the Trustee will have demonstrated irreparable harm that the bankruptcy estate will suffer. The Trustee contends that the balance of hardships weighs in his favor. While the Liquidating Trustee and the bankruptcy estate will suffer irreparable harm, the Defendants have always had the opportunity

21

to move this Court for relief from the automatic stay or to file an adversary proceeding to address any legitimate grievance they may have.  Lastly, it would be in the public interest to issue an injunction, if all the forgoing facts are established at trial, because there is a strong interest in the equitable administration of the Bankruptcy Code.  For the above stated reasons, the Court is satisfied that the Liquidating Trustee has met his pleading burden for the Seventh Count.

### Conclusion

The Court finds that the Liquidating Trustee has stated plausible causes of action under all seven counts of his Complaint and has met the pleading requirements presented by Bankruptcy Rule 7012.  Therefore, the Court will deny Defendants' Motion to Dismiss.

A separate order will issue.

ENTERED:   Mar 30 2017

_____/s/ Kevin R. Huennekens_____
UNITED STATES BANKRUPTCY JUDGE

ENTERED ON DOCKET: Mar 30 2017

22